**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : **CRIMINAL No.: CR-15-319 RS** |
| | : |
| **SHAUN W. BRIDGES** | : |
| | : |

**DEFENDANT'S MOTION FOR CONTINUED RELEASE**

The Defendant, Shaun W. Bridges, by and through his counsel, Steven H. Levin, hereby files this Motion For Continued Release and moves this Honorable Court, pursuant to 18 U.S.C.A. § 3143(a)(2)(B), to continue Mr. Bridges' release pending his December 7, 2015, sentencing hearing. In support of this motion, the Defendant provides the following information:

**I.      BACKGROUND**

On March 30, 2015, Mr. Bridges traveled at his own expense from Baltimore, Maryland, to San Francisco, California, voluntarily appearing for his initial appearance in the Northern District of California. The Magistrate Judge set conditions of release. Later that same day, Mr. Bridges met with prosecutors, disclosed his culpability, and indicated a desire to negotiate a plea agreement.[1] During his pretrial release, Mr. Bridges complied with all terms and conditions.

On August 31, 2015, Mr. Bridges again traveled voluntarily to the Northern District of California, and he entered a plea of guilty to the agreed-upon charges in a criminal information.

---

[1] At that time, Mr. Bridges also volunteered to prosecutors that he possessed four firearms, and he agreed to arrange for the firearms to be provided to a law enforcement officer upon Mr. Bridges' return to Maryland. An LEO thereafter took possession of those firearms.

Again, Mr. Bridges was released with conditions.[2]  This time, however, because of Mr. Bridges'
dire financial situation, the Court granted the Defendant's motion for noncustodial
transportation and subsistence expenses to cover the costs associated with travel from Maryland
to California.  Mr. Bridges thereafter returned to Maryland and complied with all terms and
conditions of his pre-sentencing release.

Significantly, Mr. Bridges has provided almost $500,000 in restitution to the
government *since his guilty plea* and has no access to any significant amount of money.

Mr. Bridges' sentencing date is December 7, 2015.

## II.      THE CURRENT SITUATION

On or before September 24, 2015, Mr. Bridges was the victim of a theft.  Specifically, a
wallet, its belongings, and a tablet all owned by Mr. Bridges were stolen from his mother's
vehicle, which he was using at the time.[3] [4] As a result of unusual activity involving one of his
stolen credit cards, Mr. Bridges was notified via email that Bank of America had frozen his
credit card account.  He contacted Bank of America, confirmed that his account had been
compromised, and requested a new card. Mr. Bridges also contacted USAA, with which he
maintained another credit card account, and he cancelled that card.  Both cards have since been

---

[2] The District Court added a condition of a curfew because the government was concerned that
Mr. Bridges had sought to change his name and social security number in a Maryland state
court.  Mr. Bridges, whose name had been broadcast on national news, explained to the United
States District Judge that his efforts to do so were prompted by his identity having been
compromised on several occasions.   Mr. Bridges has abided by that curfew since his return.

[3] Mr. Bridges kept his driver's license separate from the items in the stolen wallet.

[4] Mr. Bridges did not know the location of the theft, as it could have occurred either in Howard
County or Baltimore City.

replaced.  (See Exhibits A and B).  Along with the aforementioned credit cards, a Maryland State Police (MSP) identification (ID) card was also stolen.[5]

On September 25, 2015, Mr. Bridges reported the theft to the Howard County Police Department (HCPD) Southern District, located approximately one mile from his home.  A cadet took the initial report.[6]  In describing the stolen items in detail, Mr. Bridges advised that he had been in law enforcement for 12 years and had been an MSP trooper, explaining why he would have been in possession of an MSP identification card.[7]  He further described himself as retired from the MSP, as he had become a member of the State Police Retirement System by virtue of his previous employment.

http://www.sra.state.md.us/participants/members/downloads/Handbooks/BenefitHandbook-MSP.pdf (last accessed October 8, 2015).  (See also Exhibit  C).

Mr. Bridges did not initially desire to file a formal police report, as he had little hope that his items would be recovered.  Still, he wanted to open a case so there was a record of the theft.  The cadet indicated that Mr. Bridges would have to file a report.  The duty officer apparently overheard the conversation between Mr. Bridges and the cadet, intervened, and explained that Mr. Bridges needed to provide the license plate number to his mother's car.  Consequently, Mr. Bridges left the police station and returned later with his wife on their way to dinner to provide the requested information.

---

[5] Mr. Bridges previously served as an MSP Instructor and was permitted to keep the identification card when he left the Maryland State Police to join the Secret Service.

[6] In the Department of Homeland Security (DHS) report attached to the government's motion, the cadet who initially took the report claimed to have met Mr. Bridges on September 24, 2015. She was wrong.  In fact, consistent with the statement of one of the duty officers, Mr. Bridges reported the theft on September 25, 2015.

[7] Mr. Bridges became a police officer in May 2003 and remained in law enforcement until his resignation in 2015.

With Mr. Bridges' wife sitting in the car outside the Southern District, Mr. Bridges waited approximately 30-45 minutes to fill out a report, while officers with the Howard County Police Department kept him waiting.  Frustrated by their treatment of him, Mr. Bridges left and filed a report online with Baltimore City that same day.  (See Exhibit D).

On October 8, 2015, Mr. Bridges was advised to report to his pretrial services officer in Baltimore.  Mr. Bridges complied and was immediately arrested.

### III.   DETENTION HEARING IN MARYLAND

At his detention hearing in Maryland, Mr. Bridges had three witnesses prepared to testify.[8]  Rather than require their testimony, the magistrate judge presiding over the detention hearing accepted the proffers of Mr. Bridges' counsel.   The first witness, retired Special Agent-in-charge (SAC) Barbara Golden, United States Secret Service (USSS), Baltimore Division, was prepared to testify that she had previously supervised Mr. Bridges.  Furthermore, she would have testified that Mr. Bridges did possess an MSP Instructor Card, as he had served as an instructor both while with the MSP and during his tenure with the USSS.  SAC Golden further would have testified that she had recently met with Mr. Bridges and his counsel and had agreed to testify on his behalf in California in December.  SAC Golden was in the process of making travel arrangements.

Mr. Bridges' wife would have testified that she did in fact accompany her husband to the HCPD Southern District while he attempted to file a police report on their way to dinner.

Mr. Bridges' mother would have testified that her son had in fact borrowed her car around the time the theft occurred.

Ultimately, the magistrate judge released Mr. Bridges.

---

[8] Mr. Bridges' initial detention hearing was Friday, October 9, 2015.  The hearing resumed on Tuesday, October 13, 2015.

## IV.   LEGAL STANDARD

Detention of a federal defendant pending sentencing is controlled by the Bail Reform

Act of 1984, 18 U.S.C. § 3141 *et seq*.  Pursuant to 18 U.S.C. § 3143(a)(2)(B), a defendant shall

be detained pending sentencing unless--

> the judicial officer finds by clear and convincing evidence that the person is not
> likely to flee . . .[9]

*Id.* § 3143(a)(2)(B).

## V.   DISCUSSION

Mr. Bridges, a first-time offender, has voluntarily appeared at every court hearing.  He

sought assistance by the United States District Court in the Northern District of California when

confronted with financial constraints, the same constraints that would limit his ability to flee.

He pled guilty.  He cooperated.  He provided the details of his complete background (e.g., prior

addresses, employment, and travel) and his current financial situation during a lengthy

presentence interview with his assigned probation officer.  He has fully complied with all of his

release conditions and those relating to his plea agreement.

On October 8, 2015, he complied with his pretrial services officer's request to report to

his office, which is located in the federal courthouse in Baltimore.  Mr. Bridges drove himself to

the meeting, never thinking that his report of a theft would result in his being arrested.

The government suggests that Mr. Bridges attempted to "procure identity documents to

which he is not entitled," by reporting a theft. (Gov't Motion, p. 2)  The government's theory is

absurd.  Either Mr. Bridges had an MSP identification card that was stolen, or he did not.  If he

---

[9] The government appears to concede that Mr. Bridges does not pose a danger to the
community.

did, then common sense suggests that Mr. Bridges would have explained why he was in possession of the MSP ID card when describing the stolen items in detail. If he did not, it is not at all clear how a person could claim that his government credentials were stolen and thereafter obtain an ID card to replace one that he never had in the first place. Is the US Attorney's Office for the Northern District of California seriously suggesting that a Maryland state law enforcement agency would rely upon a local county police report to issue government credentials? After all, by the government's own admissions, an inquiry with the MSP Human Resources Section quickly yielded information that Mr. Bridges is not eligible for MSP "retirement credentials."[10] Importantly, in the police report filed online, Mr. Bridges listed as stolen his "billfold and electronic device," without detailing the loss of his MSP identification card. This rather cursory description contradicts the government's allegation that Mr. Bridges was somehow concocting this entire theft in an effort to obtain fake credentials. To the contrary, Mr. Bridges sought only to ensure that he was not held financially responsible for any unauthorized use of his credit cards. Given his dire financial situation, this is not at all surprising. Furthermore, while there is evidence that Mr. Bridges immediately canceled credit cards and sought to replace them, there is absolutely no evidence that in the 14 days between the theft and Mr. Bridges' arrest that he sought to obtain "retirement credentials." There is also no evidence that "retirement credentials" actually provide a benefit that Mr. Bridges' current credentials would not have already provided.

---

[10] Mr. Bridges never claimed that his "retirement credentials" were stolen. It appears that one cadet conflated Mr. Bridges' report of his stolen MSP credentials with his self-described retirement status. Significantly, the duty officer who overheard the exchange between Mr. Bridges and the cadet never asserted that Mr. Bridges had claimed to have had "retirement credentials."

In essence, the government is asking that this Court detain Mr. Bridges for being the victim of a theft.  Notwithstanding the baseless and nonsensical accusations to the contrary, Mr. Bridges' situation has not changed, and just as the United States District Judge in the Northern District of California and the United States Magistrate Judge in the District of Maryland previously determined by clear and convincing evidence, Mr. Bridges continues *not* to be a flight risk.[11]

## VI.    CONCLUSION

For the foregoing reasons, it is evident that the existing conditions will continue to reasonably assure Mr. Bridges' continued court appearances.  Accordingly, undersigned counsel respectfully requests that Defendant's Motion for Continued Release be granted.

*[Signature block on next page]*

---

[11] Notwithstanding that Mr. Bridges is facing a term of imprisonment, his pre-trial detention would have significant adverse consequences.  First, for the five days he was detained pending his hearing, Mr. Bridges was locked down for 23 hours a day for his own safety, because of his status as a retired law enforcement officer.  Second, his inability to self-surrender would raise his security classification, and he would likely be designated to a potentially more dangerous (i.e. higher security) BOP facility.  Third, he would not be able to continue with his mental health treatment.  Putting aside the fact that it remains unclear how filing a police report would have aided in this alleged scheme to flee, these are all consequences of which Mr. Bridges was previously aware, making it even less likely that he would have considered fleeing.

Respectfully submitted,


_____/s/_____
Steven H. Levin (Fed Bar #28750)
Levin & Curlett LLC
201 N. Charles Street
Suite 2000
Baltimore MD 21201
Phone: (410) 685-4444
*Attorney for Shaun W. Bridges*
*Pro Hac Vice*


        /s/
Craig S. Denney
California Bar No. 244692
Snell & Wilmer, 50 West Liberty
Street
Reno, Nevada 89501
Tel: (775)785-5440

*Local Counsel for Mr. Bridges*

8