ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorney

ANNALOU TIROL (CABN 216578)
Acting Chief, Public Integrity Section

RICHARD B. EVANS (DCBN 441494)
Trial Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
William.Frentzen@usdoj.gov
Richard.B.Evans@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>SHAUN BRIDGES,<br><br>  Defendant. | Case No. CR 15-00319 RS<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. COUNTERSTATEMENT OF FACTS .................................................................................1

    A. Bridges' Corruption Offenses .......................................................................................1

    B. Bridges' First Guilty Plea ..............................................................................................2

    C. Bridges' Second Guilty Plea .........................................................................................3

III. ARGUMENT ........................................................................................................................4

    A. Bridges Must Demonstrate Ineffective Assistance of Counsel as he Affirmatively Waived all Other 18 U.S.C. § 2255 Claims ..................................................4

    B. Bridges' Attorney Was Not Ineffective ........................................................................4

    C. Legal Standard ..............................................................................................................5

    D. Bridges Received and Benefitted from Competent Representation .............................5

    E. Bridges' Plea was not Prejudiced by his Attorney's Conduct ......................................6

    F. Sentencing Guideline Miscalculations do not Constitute Ineffective Assistance of Counsel .........................................................................................................9

IV. BRIDGES' PRECLUDED ARGUMENTS ALSO FAIL ..................................................11

    A. Bridges' Rule 11 Claims .............................................................................................11

    B. Bridges' Plea Agreement Satisfied Due Process Requirements ................................12

V. CONCLUSION....................................................................................................................14

**TABLE OF CONTENTS**

Cases

*Beckham v. Wainwright*, 639 F.2d 262 (5th Cir.1981) ........................................................... 9, 13

*Brady v. United States*, 397 U.S. 742 (1970)......................................................................... 10, 12

*Carter v. McCarthy*, 806 F.2d 1373 (9th Cir.1986)...................................................................... 13

*Chizen v. Hunter*, 809 F.2d 560 (9th Cir. 1986) .......................................................................... 13

*Cullen v. Pinholster*, 563 U.S. 170 (2011)..................................................................................... 5

*Hampton v. Evans*, 411 F. App'x 993 (9th Cir. 2011) ................................................................. 10

*Hill v. Lockhart*, 474 U.S. 52 (1985) ..................................................................................... passim

UNITED STATES' HABEAS OPPOSITION
CASE NO. CR 15-00319 RS                           i

1  *Iaea v. Sunn*, 800 F.2d 861 (9th Cir.1986)............................................................................... 6, 7

2  *Johnson v. United States*, 520 U.S. 461 (1997) ......................................................................... 11

3  *Johnson v. United States*, 539 F.2d 1241 (9th Cir.) ................................................................... 13

4  *Jones v. Sec'y, Dep't of Corr.*, 319 F. App'x 792 (11th Cir. 2009) ............................................ 10

5  *Kimmelman v. Morrison*, 477 U.S. 365 (1986)............................................................................ 6

6  *Lafler v. Cooper*, 566 U.S. 156 (2012) ........................................................................................ 5

7  *Lockhart v. Fretwell*, 506 U.S. 364 (1993) ............................................................................. 5, 6

8  *Mabry v. Johnson*, 467 U.S. 504 (1984) .................................................................................... 11

9  *McCutcheon v. Dicarlo*, 135 F. App'x 995 (9th Cir. 2005) ....................................................... 10

10  *McMann v. Richardson*, 397 U.S. 759 (1970) ......................................................................... 5, 6

11  *Missouri v. Frye*, 566 U.S. 134 (2012) ......................................................................................... 5

12  *Najera-Gordillo v. United States*, (E.D. Cal. Aug. 25, 2009) ................................................. 9, 12

13  *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003) ........................................................................ 5

14  *Osley v. United States*, 751 F.3d 1214 (11th Cir. 2014) ............................................................ 10

15  *Puckett v. United States*, 556 U.S. 129 (2009).................................................................... 12, 13

16  *Requena v. Roberts*, 278 F. App'x 842 (10th Cir. 2008)............................................................ 10

17  *Shah v. United States*, 878 F.2d 1156 (9th Cir.1989) ................................................................ 13

18  *Strickland v. Washington*, 466 U.S. 668 (1984) ................................................................. *passim*

19  *Tollett v. Henderson*, 411 U.S. 258 (1973)............................................................................... 5, 6

20  *Torrey v. Estelle*, 842 F.2d 234 (9th Cir. 1988)............................................................................ 7

21  *United States v. Alford,* 400 U.S. 25 (1970) ................................................................................ 7

22  *United States v. Barrios-Gutierrez*, 218 F.3d 1118 (9th Cir. 2000) .......................................... 12

23  *United States v. Barrios-Gutierrez*, 255 F.3d 1024 (9th Cir. 2001) .......................................... 12

24  *United States v. Benz*, 472 F.3d 657 (9th Cir.2006) .................................................................. 12

25  *United States v. Blaylock*, 20 F.3d 1458 (9th Cir. 1994) ............................................................. 5

26  *United States v. Cruz-Mendoza*, 147 F.3d 1069 (9th Cir.) .......................................................... 6

27  *United States v. Dominguez Benitez*, 542 U.S. 74 (2004) ........................................................... 7

28  *United States v. Garcia*, 909 F.2d 1346 (9th Cir. 1990)............................................................ 13

*United States v. Gordon*, 4 F.3d 1567 (10th Cir. 1993) .................................................................. 10

*United States v. Graibe*, 946 F.2d 1428 (9th Cir. 1991) ................................................................. 12

*United States v. Jeronimo,* 398 F.3d (2005) .................................................................................. 11

*United States v. Martinez*, 143 F.3d 1266 (9th Cir. 1998) ............................................................. 11

*United States v. Nunez*, 223 F.3d 956 (9th Cir. 2000) ................................................................... 11

*United States v. Olano*, 507 U.S. 725 (1993) ................................................................................ 13

*United States v. Roberts*, 5 F.3d 365 (9th Cir. 1993) ...................................................................... 5

*United States v. Rodriguez-Razo*, 962 F.2d 1418 (9th Cir.1992) ................................................. 13

*United States v. Ruiz*, 536 U.S. 622 (2002) ................................................................................... 11

*United States v. Sanclemente–Bejarano*, 861 F.2d 206 (9th Cir.1988) ........................................ 12

*United States v. Schuman*, 127 F.3d 815 (9th Cir. 1997) .............................................................. 11

*United States v. Timmreck*, 441 U.S. 780 (1979) .......................................................................... 12

*United States v. Turner*, 881 F.2d 684 (9th Cir. 1989) ................................................................. 13

*Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002) ........................................................................ 6

Statutes

18 U.S.C. § 1343 ............................................................................................................................ 1, 2

18 U.S.C. § 1512 ............................................................................................................................... 3

18 U.S.C. § 1956 ........................................................................................................................ *passim*

18 U.S.C. § 1957 ........................................................................................................................ *passim*

18 U.S.C. § 2255 ............................................................................................................................... 4

28 U.S.C. § 2255 ............................................................................................................................ 3, 4

28 U.S.C § 1746 ................................................................................................................................ 7

28 U.S.C. § 2241 ............................................................................................................................... 3

Rules

Fed. R. Crim. P. 52(b) .................................................................................................................... 12

**I.      INTRODUCTION**

Shaun W. Bridges, a former Secret Service agent, abused the public's trust by using his position in an active investigation to steal approximately 20,000 bitcoins from users of the Silk Road, an encrypted online marketplace.  When Bridges' crimes came to light he was charged by complaint with money laundering (18 U.S.C. § 1956) and wire fraud (18 U.S.C. § 1343).  Thanks to the skilled advocacy of his attorney, Bridges was able to plead guilty to a lesser money laundering charge (18 U.S.C. § 1957), which reduced his Guideline level from 26 (63-78 months) to 25 (57-71 months).  Despite this fact, Bridges now claims that he received ineffective assistance of counsel because of what amounts to a typographical error in his plea agreement and the Presentence Investigation Report (PSR).  Bridges' claim of ineffective assistance of counsel is wholly unsupported by the relevant facts and law.  Bridges agreed to plead guilty in exchange for a reduced Guideline sentence, which was competently negotiated by his attorney.  As such, his motion to vacate, set aside, or correct his sentence should be denied without a hearing.

**II.     COUNTERSTATEMENT OF FACTS**

   **A.      Bridges' Corruption Offenses**

Bridges was a member of the Baltimore Silk Road Task Force, which was attempting to ascertain the identity of the Silk Road's owner/administrator, who was then known only as Dread Pirate Roberts (DPR).  As part of that investigation, Bridges participated in the apprehension of a Silk Road customer support representative on or about January 17, 2013.  During his interview of the representative, Bridges gained key information about the Silk Road administrative functions, including how to access and reset login information on vendor accounts.  On or about January 25, 2013, Bridges abused his position by accessing a Silk Road administrator account and moving approximately 20,000 bitcoins (worth around $350,000 at the time and more than $130 million today) from various vendors to his own account at Mt. Gox, a digital currency exchange based in Japan.  Bridges' actions led Ulbricht to believe that his customer support representative was responsible for the breach.  They also caused Ulbricht to engage an individual he believed had the means to carry out violence (but was actually former DEA Special Agent Carl Force) to commit the murder for hire of the customer support representative.  Between March and May of 2013, Bridges used an online cryptocurrency exchange and converted the bitcoins into $820,000,

which he then transferred to an investment account in the United States under his control.

Bridges' actions impeded the government's then-ongoing investigation of Silk Road, including frustrating the Task Force's ability to utilize the cooperating customer support representative's access to Silk Road's administrative interface, diverting grand jury resources in order to investigate the theft of bitcoins, and prompting Ulbricht to order the killing of the government's cooperator. Bridges further obstructed justice by intentionally misleading authorities in interviews conducted on May 28, 2014, November 13, 2014 and March 30, 2015. Bridges also caused another government employee to run FinCEN checks in an effort to determine whether his actions were under investigation.

### B.   Bridges' First Guilty Plea

On March 25, 2015, the U.S. District Court for the Northern District of California issued an arrest warrant for Bridges for money laundering in violation of 18 U.S.C. § 1956, and wire fraud in violation of 18 U.S.C. § 1343. Both offenses carried a maximum sentence of 20 years' in prison. Correspondence between Bridges' counsel, Steven H. Levin, and the Department of Justice confirms that Bridges expressed a desire to plead guilty to money laundering as early as March 29, 2015, when he sat for a proffer with the government. See Email from Steven H. Levin, Levin & Curlett LLC (June 2, 2015). Ex. 1.

Between late March and early June 2015, the parties engaged in plea discussions. Initially, Levin represented that Bridges would plead guilty to money laundering, 18 U.S.C. § 1956, in exchange for not having to plead to the obstruction charge. Id. However, following Bridges' proffer, the government insisted that any plea agreement include a charge of obstruction given Bridges' many actions to obstruct the investigation. As such, the government rejected Levin's offer but ultimately agreed to change the money laundering charge from 18 U.S.C. § 1956, which carries a maximum prison sentence of 20 years, to 18 U.S.C. § 1957, which carries a maximum prison sentence of 10 years. This reduced Bridges' Guideline level from 26 (63-78 months) to 25 (57-71 months). The reduced Guideline level was secured through Levin's zealous advocacy and was the reason that Bridges agreed to accept the government's plea offer. However, due to an oversight, the maximum sentence for the money laundering charge listed in Bridges' Plea Agreement and other relevant documents was never changed from 20 years to 10 years. Ex. 2 (red-line version of plea agreement revised on June 9, 2015). Bridges

also pled guilty to a single count of obstruction in violation of 18 U.S.C. § 1512, which carries a maximum sentence of 20 years' imprisonment. This was correctly reflected in the relevant pleadings.

On August 31, 2015, Bridges' Plea Agreement (hereinafter "First Plea Agreement") was filed pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. In addition to acknowledging Bridges' offenses, the First Plea Agreement stipulates that Bridges agreed to "give up all rights that I would have if I chose to proceed to trial" and to not "file any collateral attack on [his] conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241," except to claim that counsel was ineffective." Plea Agreement, at 6.

Bridges was arraigned on the morning of August 31, 2015, and entered his guilty plea later that day. During the plea colloquy, the Court thoroughly reviewed the contents of the First Plea Agreement with Bridges prior to accepting his plea. As part of the plea hearing Bridges confirmed that he understood that, by entering into the plea agreement, he was waiving the right to collaterally attack either his plea or sentence, save for a claim of ineffective assistance of counsel. Tr. Proc. 8. On December 7, 2015, Bridges was sentenced to 71 months' imprisonment.

### C. Bridges' Second Guilty Plea

On or about July 28, 2015, after signing the First Plea Agreement but before entering his plea, Bridges stole approximately 1607 additional bitcoins that had been confiscated by the government. Since the theft only came to light in early 2016, after Bridges had been sentenced in the first case, the government negotiated a second plea agreement (hereinafter "Second Plea Agreement") with Bridges and his new counsel for an additional count of money laundering in violation of 18 U.S.C. § 1957. In this process, Bridges now claims he became aware that the maximum sentence for the same charge was misstated in Bridge's First Plea Agreement. Nonetheless, Bridges went forward in August of 2017 with the Second Plea Agreement and admitted another violation of § 1957, without raising any defect in the First Plea Agreement. United States v. Bridges, CR17-448 (RS) (N.D. Ca. 2017).

Bridges now asserts claims under 28 U.S.C. § 2255 that he would not have pled guilty if he had known that the maximum sentence for 18 U.S.C. § 1957 was 10 years and not 20. However, Bridges is operating under a false construct as he was initially charged by complaint with violation of 18 U.S.C. §

1956, which has a 20 year maximum. Had Bridges not pled guilty he would have been indicted for violating the same statute (§ 1956). It was only through his attorney's capable advocacy that Bridges was permitted to plead to the lesser money laundering charge (§ 1957). Accordingly, the errors identified by Bridges in the pleadings are nothing more than typographical errors which do not implicate Bridges' constitutional rights and which were not prejudicial to Bridges.

## III.    ARGUMENT

### A.    Bridges Must Demonstrate Ineffective Assistance of Counsel as he Affirmatively Waived all Other 18 U.S.C. § 2255 Claims

In the Memorandum of Law in Support of His Motion, Bridges improperly argues that his plea was obtained in violation of the Fifth Amendment, that the First Plea Agreement contravened contract law principles, and that his sentencing violated Rule 11 of the Federal Rules of Criminal Procedure. See Dkt. No. 169-1. Bridges waived his right to collaterally attack his sentence, judgment of conviction and waiver of indictment except to the extent they are based upon ineffective assistance of counsel. His motion can only succeed based on a showing that his attorney's representation was deficient and prejudicial; all other claims are precluded.

Bridges relinquished the right to challenge his conviction and sentence, including under 28 U.S.C. § 2255, when he signed the First Plea Agreement. Plea Agreemnt, at 5. Bridges confirmed to the Court that he understood the significance of his waiver at the time of his plea. Tr. Proc. 8. It is the policy of the Department of Justice to include an exception for 28 U.S.C. § 2255 motions based on ineffective assistance of counsel. However, this does not open the door for Bridges to assert claims otherwise barred by his valid plea agreement.

### B.    Bridges' Attorney Was Not Ineffective

Bridges' motion hinges on a claim of ineffective assistance of counsel, which is belied by the facts of this case. As described above, Levin's conduct fell squarely within the range of competence required of attorneys in criminal cases. It is precisely thanks to Levin's skillful negotiation that the money laundering charge against Bridges was changed from 18 U.S.C. § 1956 to 18 U.S.C. § 1957, which carries a lower maximum penalty and which reduced Bridges' Guideline from 26 (63-78 months) to 25 (57-71 months). Bridges cannot fairly base his claim of ineffective assistance of counsel on the

typographical errors in his plea agreement and the PSR when the discrepancies only resulted from his attorney's zealous advocacy in the first place. Allowing his motion would "grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993).

### C.    Legal Standard

In order to establish a claim of ineffective assistance of counsel, Bridges must demonstrate that (1) counsel's representation was deficient and (2) that he suffered prejudice from this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see also *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying the *Strickland* standard to challenges of guilty pleas). An attorney's representation is deficient if it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Court has observed that, "because of the difficulties in evaluating attorney performance in hindsight, courts considering ineffective counsel claims 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. at 689. Bridges must also prove that ineffective assistance prejudiced his sentencing. Id. at 693. To do so, "a defendant must generally show that, absent his counsel's errors, he would have gone to trial rather than have pled guilty." *United States v. Roberts*, 5 F.3d 365, 370–71 (9th Cir. 1993) (citing Hill, 474 U.S. at 59).

### D.    Bridges Received and Benefitted from Competent Representation

Ineffective assistance of counsel may exist if counsel's advice "was not within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). However, courts are instructed to presume that counsel "made all significant decisions in the exercise of reasonable professional judgment" and to "give [the] attorneys the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citation omitted).

Bridges' motion identifies several cases where courts have found ineffective assistance of counsel. See *Lafler v. Cooper*, 566 U.S. 156 (2012) (persuading defendant to reject a plea based on a misrepresentation of the prosecution's case); *Missouri v. Frye*, 566 U.S. 134 (2012) (failing to inform defendant of a plea offer); *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003) (reportedly rejecting a plea offer without defendant's consent); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994), as

amended (May 6, 1994) (failing to inform defendant of a plea offer). Unlike the present case, these cases concern "gross mischaracterizations," see, e.g., *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir.1986), or other grievous deficiencies in counsel's conduct. A more proportionate comparison may be made to *Hill v. Lockhart*, 474 U.S. at 56-57 (addressing erroneous advice by counsel as to parole eligibility), in which the Court rejected petitioner's claim of ineffective assistance of counsel and reiterated that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [of competence] set forth in *McMann*'" (quoting *Tollett*, 411 U.S. at 267).

Courts have observed the principle that, even if "counsel's performance fell below prevailing professional standards," this is insufficient to overturn a conviction so long as the attorney's conduct "assisted, rather than hurt," the client's case. See *United States v. Cruz-Mendoza*, 147 F.3d 1069, 1072 (9th Cir.), opinion amended on denial of reh'g, 163 F.3d 1149 (9th Cir. 1998), superseded on other grounds by *Valerio v. Crawford*, 306 F.3d 742, 748 (9th Cir. 2002). But for Levin's competent representation, Bridges would have been subject to more severe penalties for money laundering. Bridges initially faced charges under 18 U.S.C. § 1956, which carries a maximum term of imprisonment of 20 years, but ultimately pled to 18 U.S.C. § 1957, which carries a maximum term of just 10 years. Levin's zealous advocacy played a key role in securing the reduced plea, which lowered Bridges' Guideline range and resulted in a lower sentence than if he had gone to trial. Bridges was no doubt aware that he had benefitted by obtaining a lower sentencing Guideline when he signed the First Plea Agreement, and when he confirmed to the Court that he was satisfied with Levin's representation.

**E.    Bridges' Plea was not Prejudiced by his Attorney's Conduct**

A proceeding is prejudiced if "the decision reached would reasonably likely have been different absent the errors" of counsel. *Strickland*, 466 U.S. at 695–96. A mere showing of "some conceivable effect on the outcome" does not satisfy this standard. Id. at 693; see also *Fretwell*, 506 U.S. at 369. Rather, courts inquire whether the attorney's error "so upset the adversarial balance between defense and prosecution" that "the result of the proceeding was fundamentally unfair or unreliable." See *Fretwell*, 506 U.S. at 369-370; see also *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). "In every case the court should be concerned with whether, despite the strong presumption of reliability, the result

UNITED STATES' HABEAS OPPOSITION
CASE NO. CR 15-00319 RS                6

of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696.

Bridges' claim, that he would have rejected the government's plea offer but for his attorney's conduct, is amply contradicted by the record. From the beginning, Bridges was highly motivated to avoid a trial. A letter from Levin to government counsel dated June 2, 2015, indicates that Bridges "has expressed his desire to plead guilty since . . . March 29, 2015." Ex. 1. See *United States v. Dominguez Benitez*, 542 U.S. 74, 84-85 (2004) (rejecting defendant's claim that his guilty plea should be vacated after he stated "that he did not intend to go to trial, and his counsel[ ] confirm[ed] that representation"); see also *United States v. Alford*, 400 U.S. 25, 38 (1970) ("In view of the strong factual basis for the plea demonstrated by the State and [defendant's] clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it").

Under the First Plea Agreement, Bridges "received the benefit of his bargain." *Torrey v. Estelle*, 842 F.2d 234, 237 (9th Cir. 1988), contra *Iaea*, 800 F.2d at 864-65 (defendant was erroneously promised a sentence he did not receive). Bridges stated in his Declaration Pursuant to 28 U.S.C § 1746 that he correctly expected that his plea would effectively cap his exposure at 71 months of imprisonment. Bridges Decl. 2, ECF No. 11. He also anticipated that a plea would provide him with "emotional relief" and allow him to "pu[t] this matter behind him." See Ex. 1.

Bridges' claims rest on the fundamentally flawed assumption that Levin's representation deprived him of a "better choice." Bridges Decl. 4. In fact, Levin sought and obtained important concessions on Bridges' behalf. Without his counsel's zealous advocacy, Bridges would have been charged under 18 U.S.C. § 1956 and faced a maximum possible sentence of 20 years' imprisonment—precisely the conditions under which Bridges claims he was unfairly induced to plead. But for Levin's representation, Bridges would have been more likely to enter a guilty plea, not less. See *Hill v. Lockhart*, 474 U.S. at 60 (reasoning that defendant's mistaken belief about earlier parole eligibility "would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted"). Nor can Bridges argue that the discrepancies in the subject pleading create grounds for ineffective assistance of counsel when the discrepancies only emerged as a product of

his attorney's competent representation.

Bridges' claims are fundamentally nonsensical and false.  He argues that the difference between a 10 year maximum and a 20 year maximum were meaningful to his decision to plead guilty.  What he completely ignores is that his guilty plea was entered with a 30 year maximum – the combination of the maximum sentence for money laundering (10 years) and obstruction of justice (20 years).  As a result, regardless of the maximum sentence available for the crime of money laundering, Bridges faced a maximum sentence that was much higher than either his guideline range or the resulting sentence.

Bridges himself basically concedes the government's point in his Declaration.  Def.'s Mot., Doc. 169-11, at 2.  There, Bridges asserts that he entered a guilty plea and "felt confident that [the plea] effectively capped my exposure at 71 months of imprisonment, an expectation that proved correct."  Id.  If Bridges believed that he was capped at 71 months of imprisonment, then it is inconsistent that he feared a sentence somewhere between 30 and 40 years – the only result that would make the difference between a 10 year maximum and a 20 year maximum on a money laundering charge meaningful.

Bridges' claims are also nonsensical because the evidence supported a conviction for a violation of 18 U.S.C. § 1956 just as readily as it did a violation of § 1957.  Bridges was aware that the government was intent on charging him for a number of violations of 18 U.S.C. § 1956 – one for each transaction involving the proceeds of his crime.  Each of those violations would have carried a 20 year maximum.  While the defendant clearly had a right to proceed to trial on any charge brought against him, the nature of the plea to a § 1957 violation demonstrates that the government would also have been able to prove § 1956 violations – further illustrating the effectiveness of his counsel.

Additionally, Bridges claims that he learned of the 10 year maximum for a violation of § 1957 in May of 2017.  Def.'s Mot., Doc. 169-11 at 2.  This is significant because Bridges entered his second guilty plea on August 15, 2017.  Doc. 7.  Bridges never raised this issue prior to his second guilty plea.  In his second guilty plea, Bridges reiterated his intention to waive his appellate rights and rights to collateral attack other than for claims of ineffective assistance of counsel.  In that proceeding, Bridges entered a guilty plea to the Criminal Information filed against him.  Doc. 1.  Through that Criminal Information, Bridges reiterated that he was factually guilty of the thefts of funds from Silk Road and the laundering of those funds.  Doc. 1, ¶7, at 2-3 (Bridges accessed Silk Road, stole 20,000 bitcoin, and

"laundered" the bitcoin through Mt. Gox and Fidelity). That paragraph was incorporated by reference into Count One and Bridges admitted that conduct. Id. So, despite Bridges' current claims that he would not have entered a guilty plea had he known the statutory maximum, he effectively did. In addition, a trial of Bridges – should the Court grant his current § 2255 petition – would be a very short and simple trial since Bridges has made a full and complete confession to the money laundering charges (which would qualify as multiple violations of both 18 U.S.C. §§ 1956 and 1957). The only bad legal advice that Bridges has received would appear to be to withdraw his first guilty plea, lose credits for acceptance of responsibility, lose the agreement of the government not to prosecute him further, and then have a jury trial quickly resulting in convictions for multiple violations of §§ 1956 and 1957.

Finally, Bridges has not explained why the conviction for obstruction of justice would not stand regardless of the guilty plea to money laundering. In that case, Bridges' sentence – as he himself concedes in his Declaration – for obstruction would relate to the money laundering conduct and result in the same sentence. The government would then be free to try Bridges on all remaining available counts of money laundering. While the government believes that Bridges has no legal basis to overturn the single count of money laundering, the effect would actually be to the government's benefit – resulting in the same or similar sentence, followed by the government's ability to try Bridges for laundering money.

Bridges has brought a poorly conceived Motion that rails against what is immediately before him, without considering the overall picture and the potential consequences. If that is how Bridges chooses to proceed, however, he cannot later claim to be blind to the potential consequences of his Motion.

**F.    Sentencing Guideline Miscalculations do not Constitute Ineffective Assistance of Counsel**

Bridges' motion relies on dicta in *Najera-Gordillo v. United States* to stand for the proposition that "overstating the maximum punishment to which a defendant could be sentenced skews the risk and benefit calculation that the defendant must undertake." Dkt. No. 169-1 at 10-11. Yet the district court in that case did not reach the question of whether defendant was denied effective assistance of counsel, ruling instead on Rule 11 grounds. *Najera-Gordillo*, No. CIV 09-397WBS, at *1-2. Full citation here, instead of at 13? Bridges goes on to quote language from *Beckham v. Wainwright*, 639 F.2d 262, 267

(5th Cir.1981), suggesting that "the attorney has the duty to advise the defendant of the available options and possible consequences and failure to do so constitutes ineffective assistance of counsel." Dkt. No. 169-1 at 13 (internal quotation marks omitted).  This statement should be narrowly construed.  The passage in *Beckham* is drawn from *Brady v. United States*, 397 U.S. 742, 756 (1970), which makes clear that this duty entails advising on "the prosecution's case" and "the apparent likelihood of securing leniency should a guilty plea be offered and accepted."

Indeed, courts have consistently rejected ineffective assistance of counsel claims based on errors in sentence estimation.  See, e.g., *Hampton v. Evans*, 411 F. App'x 993, 994 (9th Cir. 2011) (observing that movant's claim that counsel failed to accurately advise him of his maximum sentence exposure "failed to demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'") (citation omitted); *McCutcheon v. Dicarlo*, 135 F. App'x 995, 996 (9th Cir. 2005) (reasoning that "[c]ounsel's assistance was not ineffective because it did not amount to a 'gross mischaracterization of the likely outcome presented in the case'") (citation omitted); see also *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."); see also *Osley v. United States*, 751 F.3d 1214, 1226–27 (11th Cir. 2014) (holding that "even if [Movant] could show that counsel rendered deficient performance by failing to advise him of the possible life term of supervised release, [Movant's] claim again fails *Strickland's* prejudice prong" because Movant went to trial aware of the possibility of a life term); *Jones v. Sec'y, Dep't of Corr.*, 319 F. App'x 792, 795 (11th Cir. 2009) (concurring with the district court that Jones was not prejudiced by counsel's advice because Jones failed to establish that he would have pled guilty had he been advised correctly about the punishment he faced); *Requena v. Roberts*, 278 F. App'x 842, 846 (10th Cir. 2008) (calculating that "given the substantial sentence [Movant] was facing under the original charges and the generosity of the proposal he rejected, [the court is] not convinced that there was a reasonable probability he would have accepted the offer had it been made to the more serious charge").

Bridges' undressed and retrospective statements do not satisfy the reasonable probability standard.  The fact is that Levin's competent representation secured his client the best possible deal.  As

1  the Court laid out in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of
2  lack of sufficient prejudice," then "that course should be followed [so] that ineffectiveness claims [do]
3  not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."
4  466 U.S. at 697.

## IV.  BRIDGES' PRECLUDED ARGUMENTS ALSO FAIL

### A.  Bridges' Rule 11 Claims

The First Plea Agreement remains binding and valid on both Bridges and the government. "It is well settled that a voluntary plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. . . . [O]nly when it develops that the defendant was not fully apprised of its consequences can his plea be challenged under the Due Process Clause." *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). As the Ninth Circuit further clarified, "we will generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face," *United States v. Jeronimo*, 398 F.3d (2005) at 1153, including with respect to waivers of rights to appeal. See also *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *United States v. Martinez*, 143 F.3d 1266, 1270 (9th Cir. 1998); *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) (rejecting challenges to appeal waivers). The Supreme Court has deemed it unnecessary that a defendant possess "complete knowledge of the relevant circumstances" during plea negotiations, and "permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002). Yet even if the Court were to entertain Bridges' precluded claims, his motion could not succeed on the merits. Bridges fails to demonstrate that his sentence was prejudiced due to either structural or plain error under Rule 11 of the Federal Rules of Criminal Procedure.

Bridges' motion first asserts that misstatement of the Sentencing Guidelines constitutes a structural error in Rule 11 proceedings. It does so based on an incorrect reading of *Johnson v. United States*, 520 U.S. 461 (1997), which emphasized that structural errors only arise in "a very limited class of cases." The circumstances of Bridges' sentencing clearly differ from those described in Johnson, which include the total deprivation of counsel, the lack of an impartial trial judge, the unlawful exclusion of grand jurors of the defendant's race, deprivation of the right to self-representation at trial,

deprivation of the right to a public trial, or an erroneous reasonable-doubt instruction to the jury. Id. at 468-69.

Second, Bridges contends that failure to advise him of the correct maximum penalty constitutes an "(1) error, (2) that is plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." See *United States v. Benz*, 472 F.3d 657, 658–59 (9th Cir.2006); see also Fed. R. Crim. P. 52(b). Bridges analogizes his case to *Najera-Gordillo v. United States*, No. CIV 09-397WBS, 2009 WL 2730879 (E.D. Cal. Aug. 25, 2009), full citation earlier, at 11? in which the District Court suggested an overestimation of the Sentencing Guidelines had impacted defendant's substantial rights. Dkt. No. 169-1 at 20. However, *Najera-Gordillo* runs counter to controlling precedent in the Ninth Circuit. See *United States v. Timmreck*, 441 U.S. 780, 782–83 (1979) ("[R]espondent had not suffered any prejudice inasmuch as he had received a sentence within the maximum described to him at the time the guilty plea was accepted"); *United States v. Graibe*, 946 F.2d 1428, 1433–34 (9th Cir. 1991) (citing *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988) (per curiam)) ("Failure to comply strictly with the provision of Rule 11 relating to the maximum length of the sentence that can be imposed is harmless where the record shows that the defendant knew before pleading guilty that he could be sentenced to a term as long as the one he actually received."). Bridges' motion also incorrectly cites *United States v. Barrios-Gutierrez*, 218 F.3d 1118 (9th Cir. 2000), superseded on reconsideration en banc, 255 F.3d 1024 (9th Cir. 2001), for the proposition that "[t]he district court must directly address the defendant and state the maximum sentence." Dkt. No. 169-1 at 20. The Ninth Circuit reconsidered that statement in rehearing en banc, ultimately stating that "Rule 11 does not require that the district court announce authoritatively the actual maximum sentence at the plea-taking stage." See *United States v. Barrios-Gutierrez*, 255 F.3d 1024, 1027–28 (9th Cir. 2001) (emphasis added).

### B. Bridges' Plea Agreement Satisfied Due Process Requirements

Due process requires that plea agreements be entered into voluntarily and knowingly. See, e.g., *Brady*, 397 U.S. at 747-48. A plea cannot be induced by counsel's misrepresentation. Id. at 755. However, the Court has clarified that "misrepresentation requires an intent at the time of contracting not to perform," *Puckett v. United States*, 556 U.S. 129, 138 n.2 (2009) (citation omitted). Bridges does not

allege, nor does the record suggest, that he was intentionally misled by counsel at any point.

The Ninth Circuit has further clarified that Bridges' guilty plea may be deemed involuntary only if it was "induced by his counsel's misrepresentations as to what his sentence in fact would be." *Chizen v. Hunter*, 809 F.2d 560, 561–62 (9th Cir. 1986); see also *Carter v. McCarthy*, 806 F.2d 1373, 1376 (9th Cir.1986) (ruling that failure to inform the accused of a mandatory parole term prevented the guilty plea from being voluntary and intelligent); *Beckham*, 639 F.2d at 267 (regarding a guilty plea based on counsel's false assurance of a five-year sentence). By contrast, "it is well established that an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea." *United States v. Garcia*, 909 F.2d 1346, 1348–49 (9th Cir. 1990) (emphasis added) (citing *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989)).

There is no indication in the record that Bridges' attorney made any affirmative representation as to what sentence Bridges would in fact receive. In signing his plea agreement, Bridges stipulated that "the Court is not bound by the Guidelines calculations," that it "may conclude that a higher Guidelines range applies," and that "regardless of the sentence that the Court imposes" he would not be entitled to withdraw his guilty plea. Plea Agmt. 6. Bridges further confirmed, in his May 25 declaration, that he understood that the plea agreement's proposed Sentencing Guidelines' range was advisory and non-binding. Bridges Decl. 2.

Uncertainty "is the linchpin of every plea bargain" and is "inherent in a guilty plea." *United States v. Turner*, 881 F.2d 684, 686–87 (9th Cir. 1989) (emphasis omitted) (quoting *Johnson v. United States*, 539 F.2d 1241, 1243 (9th Cir.), cert. denied, 431 U.S. 918 (1976)) overruled on other grounds by *United States v. Rodriguez-Razo*, 962 F.2d 1418 (9th Cir.1992)). As the Ninth Circuit has observed, "[t]here is no guarantee that the accused will make the correct decision or that in hindsight such plea will not reflect an error in fact or judgment," but this alone "does not make the plea involuntary." Id. (emphasis omitted). Because Bridges' plea did not rest on any "unfulfilled promise" as to the nature of the Guidelines, his sentence conforms to the standards of due process. See *Puckett*, 556 U.S. at 145 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). Bridges' motion should be denied.

//

//

## V. CONCLUSION

There is no factual or legal basis to support Bridges' claims for collateral relief. Bridges' attorneys provided competent representation, which fell well within the rubric of effective assistance of counsel. The errors in the record are nothing more than typographical errors which do not implicate Bridges' constitutional rights. Accordingly, his motion to vacate, set aside, or correct his sentence should be denied without a hearing.

Dated: July 12, 2018

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

/s/
WILLIAM FRENTZEN
Assistant United States Attorney

/s/
ANNALOU TIROL
Acting Chief, Public Integrity Section

/s/
RICHARD B. EVANS
Trial Attorney